**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No.   1:20-cr-00067-CMA

UNITED STATES OF AMERICA,

     Plaintiff,

v.

  **1.  KURT VASQUEZ,**

     Defendant.

---

**GOVERNMENT'S SENTENCING STATEMENT**

---

The defendant was a medical professional who abused his position of trust to selfishly gratify his desire for drugs at the expense of imposing substantial and unnecessary risks on patients already undergoing risky medical procedures.  He used fentanyl while working in a hospital catheterization lab and lied about it, both to his colleagues and — at first — to government agents.  However, to his credit, the defendant eventually realized the gravity of his crime and agreed to work with the government to take the steps necessary to palliate concerns about the public health impacts of his criminal choices.  Balancing these considerations together, the government recommends that the Court impose a middle-of the-guidelines sentence of three months' imprisonment (the "Recommended Sentence") at the sentencing hearing in this matter scheduled for September 14, 2021 at 10:00 a.m.

## I. THE FACTORS THE COURT MUST CONSIDER WEIGH IN FAVOR OF THE RECOMMENDED SENTENCE

In fashioning a sentence, the Court must address each of the factors set forth at 18 U.S.C. § 3553(a), including (1) the applicable United States Sentencing Guidelines (the "Guidelines"), (2) the nature, circumstances, and seriousness of the offense, (3) the history and characteristics of the defendant, and (4) the need to promote respect for the law, afford adequate deterrence, and

protect the public from further crimes.  On balance, these factors yield the conclusion that three months is sufficient, but not greater than necessary, to achieve each of these goals:  such a sentence is commensurate with the seriousness of a crime that callously elevated the defendant's desires over those of his patients but also consistent with the defendant's good faith efforts to atone for his criminal decisions and learn from them.  It would also incentivize others in a similar position to cooperate with authorities to resolve the public health concerns associated with drug diversion in the hospital setting.

### A.    The Sentencing Guidelines Authorize a Brief Prison Sentence

One of the factors the court must consider is the range recommended by the Guidelines. The plea agreement between the parties sets forth the relevant Guidelines calculation. ECF No. 30.  His offense level, which includes an enhancement for abusing his position of trust as a medical professional, is 8 (including acceptance of responsibility).  The defendant has no criminal history, which puts him Criminal History Category 1.  This yields an advisory guideline range of 0-6 months imprisonment.

The Guidelines Range provides a useful framework for evaluating all of the other factors together because it provides a "rough approximation" of sentences that will achieve all of § 3553(a)'s objectives.  *Rita v. United States*, 551 U.S. 338, 350 (2007); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006).  As set forth in more detail below the government's position is that the Recommend Sentence — a middle-of-the-guidelines sentence — is itself a rough measurement within that rough approximation that takes into account both the mitigating and aggravating circumstances relating to this crime.

**B.      The Nature and Circumstances of the Offense Support the Recommended Sentence**

The details of the defendant's conduct are set forth in the plea agreement.  ECF No. 30, ¶¶ 11-23.The defendant started working in the cath lab at a hospital in March 2019. The "cath lab" performs complicated medical procedures related to arteries around the heart.   Records show that fentanyl pulled by him from the Pyxis machine is unaccounted for beginning in late June 2019.  By late summer, he was exhibiting odd behavior that became more and more obvious.  In August 2019 he was assigned to train registered nurse, identified in the plea agreement as "Nurse 1."  By the end of that month, the nurse-trainee had witnessed a lot of alarming behavior.  The defendant would routinely pull more vials of fentanyl than the procedures required.  He took extremely long bathroom breaks (sometimes over an hour).  When he returned from these bathroom breaks he would be giggling, sweating, and talking to himself. One time he returned from the bathroom with a bandage on his arm.  The defendant also frequently showed up to work well before his colleagues, using the time to pull large amounts of medication for patients and procedures that he might not even be assigned.

On September 7, 2019, Denver Health's Director of Engineering was notified that the emergency department had flooded due to overflowing toilets serviced by a sump pump that also services the cath lab.  A contractor came in and cleaned up the sewage.   On September 10, 2019 the emergency department flooded again.  The next day, when the sump pump was cleaned, syringes were found floating in the sewage.  One day after that, on September 12, 2019, two plumbers removed numerous vials of fentanyl and syringes from the pump.

Meanwhile, the defendant's behavior became so concerning that on September 11, 2019 the trainee nurse told her boss, a registered nurse identified in the plea agreement as Nurse 2, about it.  The next day (the same day the plumbers were fishing fentanyl out of the sump pump),

the supervising nurse went to the cath lab to relay a message to the defendant that he was needed by a hospital provider. The defendant was in the bathroom, so the supervising knocked on the door and told him to go to the provider.  The defendant stayed inside for approximately 20 more minutes.  When he finally left, the supervising nurse went inside and found a fentanyl label on the floor and two empty 10cc syringes in the trashcan.  On September 16, the supervisory nurse asked Human Resources to remove the defendant from patient care.

The supervising nurse was told to tell the defendant to leave the hospital and not to come back until September 20.  She did this at 9:00 a.m. on September 17.  Forty-five minutes later, the supervisor and a hospital risk manager decided to check the cath lab's bathroom.  On the way there, they passed the defendant, who was coming from the direction of the bathroom.  Inside the bathroom, the two saw a tourniquet, bloody paper towels, two butterfly needles, syringes, and a vial of propofol.

A Special Agent with the Food and Drug Administration's Office of Criminal Investigations and a Diversion Investigator with the Drug Enforcement Administration interviewed the defendant on September 26, 2019.  At this initial interview, he did not stop making criminal choices.  He did not immediately tell the truth and do what he could to rectify his recklessness. Instead, he lied in a bid to avoid accountability.  Even after being advised that it was a crime to lie to a federal agent, the defendant continued his obstruction:  he told the agents that that he did take fentanyl, often by withdrawing two vials from the Pyxis machine for patients that only needed one.  When asked about the bathroom incident, he denied injecting himself there.  He said that he "tried to" but then decided he needed to "stop this shit" and "get help." The defendant denied taking the fentanyl found in the trash, saying that it had already been drawn up for patients that he had been assigned to treat before being asked to leave.  The

defendant estimated that he took only about 36 vials of fentanyl. When confronted with the fact that (at that point in time) 80 vials were unaccounted for, the defendant said he honestly didn't know how to account for the difference. Eventually, he admitted that on at least five occasions he treated patients while high on fentanyl. He also admitted to falsifying patient charts to indicate that he provided more fentanyl that he actually provided, all so that he could consume the excess.

This criminal conduct is serious. Investigators ultimately determine that there were approximately 220 vials of fentanyl unaccounted for. The opioid crisis is one that transcends barriers of class, status, and occupation. Highly trained healthcare professionals are not immune. Indeed, Colorado has had a well-developed government-sponsored peer assistance program for over thirty years. *See generally* Peer Assistance Services, *https://www.peerassistanceservices.org/* (last access August 30, 2021). The defendant's background and education made him more — not less — able to evaluate the insidious nature of drug addiction and gave him a wider and deeper network of people able and willing to help. He didn't avail himself of those resources. Instead he manipulated his colleagues, made false statements about his patients, and put himself in a position where others would potentially rely upon him in life-or-death situations while his judgment was impaired. These are aggravating factors that support some period of incarceration. On the other hand, there is no evidence that the risks here were realized: there is no evidence that any patients were actually harmed. This softens the edges of this factor and weighs in favor of the Recommended Sentence, rather than a higher sentence.

### C.     The Defendant's History and Characteristics Weigh in Favor of the Recommended Sentence

The defendant made a series of bad decisions.  But ultimately, he started to make better ones motivated by a sense of professional and moral duty.  Eventually, the defendant agreed to cooperate with law enforcement.  As part of that cooperation he voluntarily submitted to a proffer interview to provide assistance to the government.  He also voluntarily submitted to a comprehensive polygraph examination designed to verify the scope of his conduct and ascertain the nature of any public health harm.  He did not have to do these things.  But he did so anyways as part of a good faith effort to atone for his misdeeds.  While this does not amount to "substantial assistance" as that term is used in the guidelines — the defendant had no information about other crimes and was not in a position to help law enforcement efforts above and beyond his own narrow case — it is still a testament to the characteristics of civic service that motivated him to become a nurse in the first place.  Furthermore, it is significant that this is the defendant's only criminal conviction.

On balance, this factor mitigates in favor of a sentence that is substantially less than the top sentence recommended by the guidelines.  The defendant should receive three months, rather than the six months his conduct might otherwise have recommended, as a result of his genuine effort to reduce and repair his breaches of professional trust.

### D.     Concerns related to Deterrence, Respect for the Law, and Just Punishment also Weigh in Favor of the Recommended Sentence

Each of the most salient remaining sentencing factors support the recommended sentence. As a matter of general deterrence, the sentence in this case should be enough to communicate to any other professional with a substance abuse problem that the benefits of using the existing network of rehabilitative resources, such as peer assistance is vastly preferable to a felony

conviction and likely jail time.  A sentence of incarceration — even a short one — is *qualitatively* more conducive to general deterrence than a sentence of probation.  Even a short period of prison communicates that abuses of public trust that put others at risk are serious enough to get the most serious form of criminal punishment.  This was not "mere" possession or use of a drug.  It was a crime that implicated public health by corroding faith in the medical profession and added to the already-existing risks of any complicated medical procedure.  Non-custodial sentences in cases like this potentially encourage other medical professionals with addictions to gamble that their next fix is "worth it" so long as no one gets hurt:  the worst that will happen is the minimal intrusions on liberty associated with probation and a treatment program.  A sentence in this case should change the risk calculus so that it is weighted in favor of decisions that prioritize patient safety over personal gain.

Specific deterrence, too, weighs in favor of a jail sentence.  Although the defendant had no prior convictions, the sentence in this case should be such that even in the unfortunate case of a relapse the defendant understands that the consequences of diverting drugs and abusing his professional obligations are much higher than the short-term "benefit" of using.  A jail sentence here would also communicate respect for the law by appropriately punishing the defendant's initial impulse to lie to law enforcement even after being advised that doing so is a crime. Finally, the Recommended Sentence is a just one tailored to the particular aggravating factors associated with the defendant's conduct but also taking into account the mitigating factor of the defendant's cooperation and the lack of patient harm.

## II.   CONCLUSION

The defendant's unique position as a trusted health care professional allowed him access to powerful narcotic drugs, gave him the skills and knowledge he needed to manipulate his way

into personal possession of those drugs, and made his personal decisions publicly risky.  His

crime deserves a brief period of incarceration.  However, the government asks that the Court

provide some leniency — that it not impose a top-of-the-guideline sentence — to take into

account the defendant's effort to restore the trust he stole and to encourage others in a similar

position to do the same.  For all of these reasons, and for the reasons set forth above, the

government recommends that the Court impose a sentence of 3 months' imprisonment and one

year of supervised release.

Respectfully submitted this 31st day of August, 2021.

MATTHEW T. KIRSCH
Acting United States Attorney
District of Colorado

By:    s/ *Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on this 31st day of August, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

s/ *Bryan David Fields*
BRYAN DAVID FIELDS
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov